IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANGELA KAY HURST                                                                    PLAINTIFF

V.                                             NO. 14-3111

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration           DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Angela Kay Hurst, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her applications for DIB and SSI on January 27, 2012, alleging disability since May 16, 2011, due to "bipolar, major depressive, macrocytic anemia, anxiety." (Tr. 109-118, 146, 150). An administrative hearing was held on April 17, 2013, at which Plaintiff appeared with counsel and she and her grandmother testified. (Tr. 28-51).

By written decision dated August 1, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – post-traumatic stress disorder (PTSD) and bipolar disorder. (Tr. 12). However, after reviewing all

1

of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and carry out simple, routine, repetitive tasks and can respond to usual work situations and routine work changes. Supervision required is simple, direct, and concrete. The claimant can occasionally interact with supervisors, co-workers, and the public.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as production work/assembler (assembler of small products); housekeeper; and poultry processor (eviscerator, dresser, and killer). (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied the request on September 18, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

In April of 2011, Plaintiff was admitted to White County Medical Center South to the psychiatric unit for acute stabilization, because she had thought of overdosing and recently overdosed on temezepam with Abilify. (Tr. 244). Plaintiff wanted to be in a safe place and did not want to act on suicidal thoughts. (Tr. 244). Her history was significant for

2

methamphetamine and marijuana use, and she smoked one half packs of cigarettes a day. (Tr. 244). Plaintiff was discharged on April 20, 2011, with the following diagnosis:

| | |
|---|---|
| Axis I: | Bipolar disorder without psychotic features, PTSD/chronic |
| Axis II: | Deferred |
| Axis III: | Sinus headaches, arthritis, chronic pain, low blood pressure The patient with kidney stones, hypothyroidism |
| Axis IV: | Primary support |
| Axis V: | GAF 45 |

(Tr. 254).

On June 2, 2011, Plaintiff was evaluated by Jacki Coombe-Moore, M.D., of Counseling Associates, complaining of depression and irritability. (Tr. 333). Plaintiff reported that the lithium and Zyprexa she was then taking were helping some, and admitted that she had drug problems in the past, but denied any at that time. (Tr. 333). However, Plaintiff also said she used marijuana. (Tr. 333). Dr. Coombe-Moore found that she did not get the true history of bipolar disorder, possibly a cyclothymia superimposed over PTSD and personality disorder, but Plaintiff did respond to the treatment for mood disorder. (Tr. 334). Dr. Coombe-Moore diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Mood disorder NOS provisional, r/o PTSD chronic |
| Axis II: | Deferred but probable |
| Axis III: | Arthritis, headaches, hypothyroidism |
| Axis IV: | Social, occupational, financial, relationship, victim of abuse as a child |
| Axis V: | 40. Highest in last year unknown, presumably higher she was working |

(Tr. 334). Plaintiff was counseled at Counseling Associates three more times in June, and by June 23, 2011, Dr. Coombe-Moore reported that Plaintiff was increasingly moody and labile and seemed to be decompensating, although some of it might be situational. (Tr. 3310.

On July 5, 2011, Plaintiff reported she was doing a "little bit better" with the combination of Celexa and Valium. (Tr. 327). She was reported as much less agitated and

3

labile and seemed to be getting better. (Tr. 327).  On July 11, 2011, Plaintiff was reported as pleasant and cooperative and made good eye contact. (Tr. 330).  On July 14, 2011, Plaintiff reported that she lost her job and had no way to pay for her medication. (Tr. 328).

On August 23, 2011, Plaintiff reported to Dr. Coombe-Moore that she was significantly better and obtained the Zyprexa at the Christian Clinic in Yellville, and liked it better than the Seroquel of Abilify. (Tr. 324).  Plaintiff also indicated that she was considering going back to school, and had applied for a job at a number of places. (Tr. 325). Plaintiff was reported as being better focused. (Tr. 325).  On November 8, 2011, Plaintiff was reported as being much calmer, and was continuing to look for work. (Tr. 323).  Plaintiff also reported that she smoked marijuana on a regular basis, and would continue to do so. (Tr. 323).  Her GAF at that time was reported as 50. (Tr. 323). On November 15, 2011, Plaintiff reported to Dr. Coombe-Moore that she was better and thought she was ready to go back to work part time. (Tr. 322).

On January 17, 2012, Plaintiff presented to the Health Resources of Arkansas, Wilbur D. Mills Crisis Unit, stating that she took a gun to her head "but it didn't have any damn bullets in it." (Tr. 298).  A friend had given some of her medications to Plaintiff ("Xanax's") and she took a handful. (Tr. 298).  Plaintiff reported experiencing problems "all my life" and had been out of medications for two weeks. (Tr. 299). Plaintiff reported that she smoked marijuana daily. (Tr. 299).  Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | Bipolar with psychotic episodes by client report<br>MDD<br>Sexual abuse of child (victim) |
| Axis II: | Deferred |
| Axis III: | None reported |
| Axis IV: | Problems with access to health care; problems related to social environment; occupational problems; economic problems; problems related to legal system/crime |

4

        Axis V:        GAF – 42

(Tr. 300). It was recommended that Plaintiff be hospitalized for suicidal thoughts. (Tr. 301). In the Nursing Admission Assessment, it was reported that Plaintiff said she could not afford her medication, that medications did not help, and that the counselor gave her the run around. (Tr. 269). She also stated that she needed her "pot" because it kept her from being mad or jumpy. (Tr. 285). Plaintiff stated that marijuana helped her be calm and deal with people. (Tr. 287). Plaintiff was released from the crisis unit on January 20, 2012. (Tr. 260). On January 30, 2012, Plaintiff reported to Cynthia Crowson, L.C.S.W., at Health Resources, that she was arrested the day after her release for "harboring a runaway" (her 17 year old stepson). (Tr. 373).

      On February 8, 2012, Plaintiff reported to Ms. Crowson that she was experiencing daily anxiety panic attacks, and the prognosis for Plaintiff was good "dependant [sic] on client compliance with treatment recommendations and motivation for change." (Tr. 378). Plaintiff was diagnosed with bipolar I depressed, severe w/o psychosis, and PTSD, and given a GAF score of 42 (Tr. 379). On February 14, 2012, Ms. Crowson observed improvement in Plaintiff's mood, and Plaintiff reported that it had been "3 years" since she had felt as good as she did that day, and she reported satisfaction with her medicine regime. (Tr. 385). Plaintiff reported she would be flying to Washington State to visit with her mother, whom she had not seen in three years. (Tr. 385). On February 14, 2012, Plaintiff was discharged by Counseling Associates, Inc., and her diagnosis on discharge was as follows:

        Axis I:        Mood Disorder NOS
                        r/o PTSD
        Axis II:      Deferred but probable
        Axis V:      GAF – 50

(Tr. 317).

5

On March 13, 2012, Plaintiff reported to Ms. Crowson that she had a decrease in her anger with medications and that she was to receive her first invega injection that day. (Tr. 443). She reported the trip to Washington went well, and that she did not get to see all the friends she had hoped to see. (Tr. 443). On March 20, 2012, Plaintiff reported dissatisfaction with her medications, because that they were affecting her sex life and weight gain. (Tr. 445).

On April 3, 2012, Plaintiff reported to Ms. Crowson that it had been a couple of weeks since she had problems with her temper and reported improved ability to express her feelings and set boundaries with others. (Tr. 451). She also reported that she had been fishing a lot. (Tr. 451).

On April 16, 2012, Plaintiff underwent a Mental Diagnostic Evaluation by W. Charles Nichols, Psy.D. (Tr. 392). During the evaluation, Plaintiff reported that she engaged in methamphetamine usage and socialized with "the wrong people." (Tr. 392). Plaintiff reported that she had anxiety attack episodes in public "when people piss me off." (Tr. 393). She reported that her anxiety symptoms began surfacing around the age of 18, reemphasizing that she had no particular fear but was "just pissed off" by people, such as when they bumped into her. (Tr. 393). Plaintiff reported she was receiving counseling and psychiatric care at Health Resources through Katherine Darling, APN. (Tr. 393). Plaintiff advised Dr. Nichols that she bathed daily, drove an automobile about 1-2 times per week, was capable of cooking a variety of meals, such as spaghetti, steaks, or chicken, denied frequent problems with recalling when to take her medications, fed various pets, washed dishes and did laundry independently, and cleaned her home. (Tr. 394). Plaintiff reported using methamphetamine as recently as July of 2011, and allegedly began using it in 2009. (Tr. 395). Plaintiff admitted she smoked marijuana daily and last used the drug the previous day. (Tr. 395). She

admitted using about two bowls per day. (Tr. 395).  Dr. Nichols diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Mood Disorder NOS |
| | Methamphetamine Dependence, Sustained full remission (per claimant only) |
| | Cannabis Dependence |
| Axis II: | Deferred |
| Axis V: | GAF – 60 (Current) |

(Tr. 397).  Dr. Nichols found that Plaintiff had mild impairment in her activities of daily living and that she had the capacity to interact and communicate with others. (Tr. 397).  Dr. Nichols found Plaintiff had above average attention capacity and that her mental effort was excellent during the assessment. (Tr. 397).  He also found that Plaintiff responded with adequate pace. (Tr. 398).

On April 17, 2012, Plaintiff reported to Lauri Patterson, RN, at Health Resources, that overall she felt like she was doing better than when she had her breakdown previously, but that her grandmother was smothering her. (Tr. 452).

On April 20, 2012, Dr. Shannon H. Brownfield, conducted a General Physical Examination, and found that although Plaintiff had decreased sensitivity to fingertips and not the thumbs, she could perform all limb functions. (Tr. 403).  Dr. Brownfield reported that Plaintiff had a very flat affect and mood. (Tr. 404).  Dr. Brownfield found Plaintiff had moderate limitation with her hands and globally severe/limitations secondary to her mood disorder. (Tr. 404).

On April 23, 2012, non-examining consultant, Dr. Jonathan Norcross completed a Case Analysis and found that Plaintiff's medical records supported a "Not Severe" physically determination. (Tr. 407).

On May 17, 2012, non-examining consultant. Kay Cogbill, M.D., completed Mental RFC Assessment and Psychiatric Review Technique forms. (Tr. 408, 412).  Dr. Cogbill found Plaintiff had a mild degree of limitation in activities of daily living and moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 422).

On May 23, 2012, Plaintiff reported to Ms. Darling that she was having a lot of anger problems, and was not sleeping. (Tr. 454). Her attention and concentration were reported as impaired. (Tr. 455).  On June 12, 2012, Ms. Darling reported that Plaintiff was calm and cooperative, and Plaintiff denied any current symptoms of anger or irritability. (Tr. 458).  On June 18, 2012, Plaintiff reported to Ms. Crowson that she had been experiencing increased anger in the previous three weeks, had thrown and damaged her phone; broke her fishing pole; had difficulty sleeping; was unable to afford Ambien; and had been advised she was losing her unemployment. (Tr. 459).

On July 10, 2012, Plaintiff reported issues with her cousin and his family, who were using methamphetamine and kicking her out of her trailer. (Tr. 460).  Through the rest of July and into August of 2012, Plaintiff continued to struggle with her family situation, and on August 16, 2012, reported to Ms. Crowson that she was hoping to start college in the spring and work toward her associate degree. (Tr. 469).  On August 17, 2012, Plaintiff reported that she apparently engaged in drug use, and was upset. (Tr. 467).

On October 8, 2012, Plaintiff reported that her reduction in mania had been very beneficial, but she was also experiencing loss of more cheerful moods. (Tr. 472).  On October 22, 2012, Plaintiff told Ms. Darling that her hallucinations were controlled with the invega injections and that she remained sober. (Tr. 490).  On October 24, 2012, non-

8

examining consultant, Jerry R. Henderson, Ph.D., completed a Case Analysis, and affirmed the May 17, 2012 decision. (Tr. 487). On October 24, 2012, non-examining consultant, Bill F. Payne, M.D., completed a Case Analysis and affirmed the assessment dated April 23, 2012. (Tr. 488).

On October 30, 2012, Plaintiff reported to Dianne Martaus, L.C.S.W., of Health Resources, that she had discontinued the use of marijuana two weeks prior. (Tr. 494). She reported that she had been having an increase in auditory hallucinations since then. (Tr. 494). On November 6, 2012, Plaintiff's mood was slightly anxious and her affect was constricted. (Tr. 495).

On November 20, 2012, Plaintiff reported to Ms. Martaus that she had been feeling less depressed, had reduced psychosis, and was enjoying her family. (Tr. 496). Plaintiff presented to Ms. Darling in December of 2012 with constricted affect. (Tr. 498). On December 18, 2012, Ms. Darling reported that the higher dose of Invega Sustenna helped Plaintiff, but she felt some stiffness from it at first. (Tr. 500).

On January 2, 2013, Plaintiff reported to Nurse Patterson that she was going to south Arkansas to visit her favorite cousin, and was looking forward to that. (Tr. 504). Plaintiff reported on January 29, 2013, that she had a good visit and still seemed relaxed following her trip. (Tr. 505). She did not seem anxious, and it was reported that overall, Plaintiff reported she was doing fine at that time and was compliant with her medications. (Tr. 505).

On February 26, 2013, Plaintiff denied any side effects or symptoms that were problematic at that time. (Tr. 507). She denied a mood disturbance at that time. (Tr. 507).

On March 18, 2013, Dr. Jay Petty completed a Certificate for Individuals with Developmental Disabilities, reporting Plaintiff's diagnosis of schizoattentive disorder. (Tr.

229).  On March 19, 2013, Ms. Darling reported that Plaintiff's mood and hallucinations were controlled, but she had been told by her grandmother that she was selectively blanking out on some memories of events. (Tr. 508).  On March 26, 2013, Plaintiff reported to Ms. Martaus that she had been alone in home for a week and expressed pride that she managed that challenge. (Tr. 512).

On April 16, 2013, Ms. Martaus reported that Plaintiff's diagnosis had been changed to schizoaffective disorder and PTSD. (Tr. 230).  Also on April 16, 2013, Joan Shepard, LPC, wrote a letter stating that because of Plaintiff's mental impairment, she was unable to work at that time. (Tr. 517).  She stated that Plaintiff had problems being around people, concentrating, and being able to deal with stress of any kind. (Tr. 517).  Ms. Shepard believed Plaintiff would be unable to work for at least another year. (Tr. 517).

Subsequent to the hearing held before the ALJ, and subsequent to the ALJ's decision, on September 12, 2013, Plaintiff underwent a Mental Diagnostic Evaluation by Richard D. Back, Ph.D. (Tr. 518).  In Dr. Back's evaluation, he found Plaintiff suffered from mental impairments that markedly interfered with her ability to function in four areas. (Tr. 523-524).

**III.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply

because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the

Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV. Discussion:

Plaintiff raises the following arguments on appeal:  1) Whether the ALJ properly evaluated Plaintiff's mental limitations since it relied solely upon the opinion of a non-treating medical provider; 2) Whether the ALJ applied the proper provision in the evaluation of Plaintiff's mental impairments; 3) Whether the ALJ placed the proper limitations upon Plaintiff's ability to work based upon Plaintiff's mental impairments; 4) Whether the hypothetical questions to the VE constitute sufficient evidence; and 5) Whether the ALJ properly evaluated the credibility of the evidence. (Doc. 10).  After reviewing Plaintiff's arguments, for the sake of convenience, the Court will consider these arguments in the following fashion and order:  1)  Whether the ALJ erred in not finding Plaintiff's impairments met Listings 12.02 and 12.03; 2) Whether the ALJ erred in his credibility analysis; 3) Whether the ALJ erred in his RFC determination; and 4) Whether the ALJ properly relied upon the VE's opinion.

### A. Failure to Meet Listings:

Plaintiff argues that the ALJ erred in not evaluating whether Plaintiff's impairments met Listing 12.02 or 12.03.  However, Plaintiff bears the burden of establishing her impairment meets an impairment enumerated in the listings, and Plaintiff has failed to meet that burden.  McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).  Plaintiff merely refers to the diagnoses of schizoaffective disorder and PTSD, but "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." Id. at 611-612. Plaintiff does not list the specific

12

criteria for the listings, or explain how she meets those listings. In addition, failure to address the Listing by the ALJ is not reversible error if the record supports the overall conclusion. Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011). The Court has reviewed Listings 12.02 and 12.03 and concludes that after considering the record as a whole, as well as the additional factors discussed below and in Defendant's brief, Plaintiff's impairments did not meet or equal a listing under 12.02 and 12.03.

### B. Credibility Analysis:

Without elaborating, Plaintiff argues that the ALJ's decision does not properly evaluate Plaintiff's credibility. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 17). The ALJ then discussed the medical evidence of record; Plaintiff's use of marijuana; Plaintiff's improvement when compliant with medication; Plaintiff's indication

13

that she felt able to go back to work part-time; Plaintiff's report on February 14, 2012, that she was feeling better than she had in three years; Plaintiff's travel to Washington state to visit her mother and her travel to visit her cousin in south Arkansas; and Plaintiff's daily activities. (Tr. 13, 17-20).  Plaintiff advised Dr. Nichols in April of 2012 that she was able to bathe daily, drive an automobile, cook a variety of meals, and denied frequent problems with recalling when taking her medication. (Tr. 394).  She was able to feed her various pets, wash dishes, do her laundry independently, and clean her home. (Tr. 394).  At that time, she was still smoking marijuana daily. (Tr. 395).  It is also noteworthy that in August of 2012, Plaintiff reported she was hoping to start college in the spring and work toward her associate degree and had completed the entrance test. (Tr. 469).  In January of 2013, Plaintiff visited her cousin in south Arkansas, and upon her return, reported she was doing fine and was compliant with her medications. (Tr. 505). Plaintiff did not complain of any side effects of her medication.  (Tr. 19).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C.     RFC Determination:

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC is incorrect due to his reliance upon the opinion of the non-treating medical provider and Dr. Nichol's evaluation.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from

14

symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'"  Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 20     13).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record."  Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014).  "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'"  Id.  "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned."  Id

In his decision, the ALJ found Plaintiff would be able to perform a full range of work at all exertional levels, with certain nonexertional limitations. (Tr. 14). The ALJ discussed Plaintiff's complaints, the letters written by Plaintiff's aunt, mother, and grandmother, and found they were not supported by the objective medical evidence of record. (Tr. 15-16). The ALJ also discussed the opinions of Plaintiff's treating and non-treating medical providers, noting Plaintiff's use of marijuana and the fact that Plaintiff's mood stabilized with medication and counseling. (Tr. 17). The ALJ gave the opinion of Dr. Nichols considerable weight, finding it supported the finding that Plaintiff was capable of at least unskilled work. (Tr. 18).

The ALJ considered the opinion of Dr. Brownfield, who found Plaintiff had moderate limitation to the use of her hands and a globally severe limitation, secondary to her mood disorder. (Tr. 19). However, the ALJ found Dr. Brownfield's assessment was not supported by the other objective medical evidence of record. (Tr. 19). The Court agrees. Dr. Brownfield found Plaintiff had decreased sensitivity to her fingertips, and diagnosed her with "B12 def. with neuropathy," but Plaintiff was able to perform all other limb functions. (Tr. 403-404). Dr. Brownfield only described Plaintiff's mood as having a "flat affect," but there is nothing else in her findings to support Dr. Brownfield's conclusion that Plaintiff was globally severely limited.

The ALJ also considered and discussed the records from Health Resources of Arkansas, including the notes from Ms. Martaus and Joan Shepard. (Tr. 19-20). The ALJ gave them some weight but correctly noted that Ms. Shepard's opinion that Plaintiff was unable to work was reserved for the commissioner. The ALJ gave the remaining opinions of the State Agency medical consultants great weight, and concurred with their finding that

Plaintiff was limited to unskilled work. (Tr. 20). Finally, the ALJ appropriately noted that although Plaintiff indicated she had mental issues since her juvenile years, she was able to work consistently since the age of 19.

The Court has considered the Mental Diagnostic Evaluation dated September 12, 2013, conducted by Dr. Back, which was considered by the Appeals Council. When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The ALJ issued his decision on August 1, 2013. (Tr. 7-27). Dr. Back's evaluation is dated September 12, 2013, and he was reporting Plaintiff's condition as of that date. (Tr. 518-524). "Where evidence obtained subsequent to the ALJ's decision is at odds with the evidence before the ALJ, such evidence may reflect only a post-hearing deterioration in a

claimant's mental condition, which is beyond the scope of judicial review." Probst v. Colvin, No. 4:12CV439AGF(FRB), 2013 WL 950996 at *13 (E.D.Mo. Feb. 22, 2013) citing Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the various medical providers.

### D.  Hypothetical Question to the VE:

Plaintiff generally argues that the hypothetical question posed to the VE does not include all of Plaintiff's mental limitations, and was therefore defective.  On May 11, 2013, the VE submitted his responses to the written interrogatories posed by the ALJ. (Tr. 235-238).  The first hypothetical posed to the VE by the ALJ reads as follows:

> #7.  Assume a hypothetical individual who was born on December 26, 1979, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6.  Assume further that this individual has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and carry out simple, routine, repetitive tasks.  She can respond to usual work situations, routine work changes, and supervision that is simple, direct, and concrete. She can occasionally interact with supervisors, co-workers, and the public.
>
> p. 237 - #10.  Could the individual describe in item #7 perform any unskilled occupations with jobs that exist in the national economy?
>
> A:  Yes – Production work; Housekeeper; poultry processing

(Tr. 236-237).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set

18

forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the jobs of production work/assembler (assembler of small products); housekeeper; and poultry processing (eviscerator, dresser, and killer).  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.     Conclusion:

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of October, 2015.


                                                              s/ *Erin L. Setser*
                                                            HON. ERIN L. SETSER
                                                             UNITED STATES MAGISTRATE JUDGE